STATE of Maine

v.

Dana MOREY.

Supreme Judicial Court of Maine.

Argued Nov. 13, 1980.

Decided March 26, 1981.

Janet Mills, Dist. Atty., John C. Sheldon, Asst. Dist. Atty., Fred Fenton (orally), Legal Intern, Farmington, for plaintiff.

Gauvreau & Thibeault, Paul G. Thibeault (orally), Lewiston, for defendant.

Before McKUSICK, C.J., and WERNICK, GODFREY, GLASSMAN, ROBERTS and CARTER, JJ.

CARTER, Justice.

Dana Morey was convicted following a jury trial in Superior Court, Franklin County, of disorderly conduct and assault on a police officer. On appeal, Morey contends that the trial court erred in refusing to grant his motions for acquittal and that it improperly instructed the jury on both counts. We affirm the conviction for disorderly conduct and reverse the conviction for assault on a police officer.

The charges against Morey resulted from a fight in Stratton and his later assault on a deputy sheriff in the Franklin County Jail. Although the testimony at trial respecting these events varied, the jury was entitled to find the following facts.

On July 10, 1979, an off-duty police officer passing through Stratton noticed Morey and another man, Michael O'Neal, fighting in the parking lot of Roger's Motel. In order to stop the fight, the officer stepped between the combatants, told Morey to leave and headed him up the street. He then turned to deal with O'Neal. When O'Neal's yells alerted him to look back, he saw that Morey had returned and "had just taken a swing." To prevent the fight from resuming, the officer then arrested Morey, and had him brought to the county jail.

While Morey was booked at the jail, he acted unruly and appeared to the booking officer, Deputy Cayton, to be drunk. As Cayton ushered Morey into a jail cell, Morey turned on the deputy, put him into a headlock, and, after the two fell, stuck his fingers into the deputy's eyes. With the help of two other officers, Deputy Cayton eventually subdued Morey.

Morey raises several issues concerning both convictions. His first two points address his conviction for assault on an officer, in violation of 17–A M.R.S.A. § 752–A(1)(B),[1] and rest on his conclusion that, under this statute, the state must prove that the defendant knew that the person assaulted was a prison official. Morey founds this conclusion on his interpretation of the policy behind section 752–A and the interaction of that section with other statutes. From that basis, he challenges the court's denial of his motion to acquit on the assault charge and the jury instructions on the elements of the offense.

In support of his motion to acquit, the defendant argued at trial that the record contained no evidence that Morey knew at the time of his assault that Deputy Cayton was a prison official. On appeal, he contends that, because that element of the offense was not proven, we must reverse his conviction. We are not persuaded. Even if his statutory analysis is correct, the defendant sees the evidence selectively. Morey did testify that he was unaware of Cayton's identity because the deputy was not wearing a uniform and instead was dressed "like inmates." Yet he also testified that Cayton and another man, also a deputy not in uniform, questioned and searched him when he first arrived at the jail. In addition, Cayton testified that Morey addressed him as "Officer" during this booking procedure. The assault occurred only after Cayton unlocked the cellblock door to allow Morey to enter.

The trial court properly denied the motion to acquit if "there was credible evidence from which the jury would be justified in believing beyond a reasonable doubt that the defendant was guilty as charged." *State v. Doughty*, Me., 399 A.2d 1319, 1326 (1979). The jury could find from this evidence that Morey had deduced Cayton's identity. Therefore, even though Morey testified that he did not know of Cayton's official status, we find no error in the court's denial of the motion to acquit.

We must reach a different conclusion, however, on the defendant's challenge to the jury instructions on the elements the state must prove for the offense of assault on an officer. Here, the defendant squarely presents the question, which we do not

---

1. 17–A M.R.S.A. § 752–A, assault on an officer, states:

1. A person is guilty of assault on an officer if:

A. He intentionally, knowingly or recklessly causes bodily injury to a law enforcement officer while the officer is in the performance of his official duties; or

B. While in the custody in a penal institution or other facility pursuant to an arrest or pursuant to a court order, he commits an assault on a member of the staff of the institution or facility. As used in this paragraph "assault" means the crime defined in chapter 9, section 207.

2. A complaint for an assault on an officer may only be brought by the chief administrative officer of the law enforcement agency in which the officer against whom the assault was allegedly committed is a member.

3. Assault on an officer is a Class C crime.

have to decide on his challenge to the sufficiency of the evidence, of whether Morey must have known that his victim was a prison official. Before reaching the merits of that issue, though, we must first determine whether the defendant properly preserved the question in the trial below.

At the close of the state's evidence, the defendant requested an instruction that simple assault under 17–A M.R. S.A. § 207 would be a lesser included offense if the jury found that Morey did not know that Cayton was a police officer. The court responded that it would instruct on the lesser included offense but not on knowledge of the victim's status. The defendant did not formally object to the court's denial of his requested instructions, nor did he renew the request at the close of trial. He did, though, later object to the state's request for a further instruction that it would specifically not have to prove knowledge that the person assaulted was an officer. Because the defendant had already requested the contrary instruction, and a renewal of that request appeared futile, that objection sufficiently preserved the issue for appeal. *See State v. Rice*, Me., 379 A.2d 140, 144 (1977).[2]

We begin our analysis of the merits of Morey's proposed jury instruction by examining the language of three sections of Title 17–A: sections 752–A(1)(B), 207, and 11. Section 752–A(1)(B) does not specifically require knowledge or any other culpable mental state. It does, though, incorporate the definition of assault in section 207, which specifies a culpable mental state:

> 1. A person is guilty of assault if he intentionally, knowingly, or recklessly causes bodily injury or offensive physical contact to another.

Although the expressly required mental state applies only to the assault element of section 752–A(1)(B), section 11 requires a similar mental state for the other elements of the offense by stating as a general rule: "A person is not guilty of a crime unless he acted intentionally, knowingly, recklessly, or negligently, as the law defining the crime specifies, with respect to each element of the crime . . . ." Section 11 provides for exceptions to this rule in subsections 4 and 5.

The state directs our attention to the exception contained in subsection 4(A). This provision states:

> "Unless otherwise expressly provided, a culpable mental state need not be proved with respect to . . . [a]ny fact which is solely a basis for sentencing classification . . . ."

The State compares the offense of assault on a prison official, a Class C crime, with simple assault, a Class D crime, and reasons that the element of the prison official in section 752–A is only relevant for sentencing classification. Therefore, it concludes, no culpable mental state applies to that element.

We must reject this reasoning for several reasons. First, the location of the two sections, 207 and 752–A, within Title 17–A suggests that the legislature intended a distinction between the two sections beyond differences in sentencing classification. Section 207 appears in Chapter 9, Offenses Against the Person. Rather than falling into the same chapter, which would be its logical location if only distinguished by severity of punishment, section 752–A appears in Chapter 31, Offenses Against Public Administration. In contrast to this

---

**2.** We have in the past urged counsel to adopt "the better practice" of renewing, at the conclusion of the charge, all objections to the instructions as given by the court. *State v. Rice*, Me., 379 A.2d 140, 144 n.3 (1977). Such admonitions are put forth for the guidance of the bar. *See State v. Hazelton*, Me., 330 A.2d 919, 922 n.4 (1975). The present case and others recently before us suggest that the practice urged in *Rice* has not been adopted by the trial bar.

The trial court can facilitate the adoption of this practice and narrow the exposure to reversal on the basis of claimed errors in instructing the jury by providing, as a matter of routine, an opportunity for counsel at the conclusion of the charge to renew at sidebar all claims of error in the charge. Where a wise trial judge provides such an opportunity, wise counsel should have care to assure that all claims of error in the charge are renewed for the trial judge's attention and for the record on appeal.

separation, the offenses and different sentencing classifications to which section 11(4)(A) clearly applies appear either juxtaposed, e. g., 17–A M.R.S.A. §§ 207 (assault) and 208 (aggravated assault) or within the same section, e. g., § 362 (classification of theft offenses); § 402 (criminal trespass). Especially where the legislature did prescribe several assault offenses within Chapter 9, we must ascribe some significance to the legislative placement of § 752–A in Chapter 31.

■ Additionally, the comments under sections 207 and 752–A show that the legislature intended these sections to serve different purposes. The comment to section 207 discusses the traditional division of assault into simple assault, now represented by section 207, and aggravated assault, section 208. It concludes: "The two assault sections are distinguishable on the basis of the seriousness of the harm caused or the risks to life that are posed by the defendant's conduct." The comment does not mention section 752–A. The comment to section 752–A states in part: "The policy here is to discourage people in custody from a violent response to what they see as an illegal arrest." We must conclude from this statement that, although the underlying action may be the same in both sections 207 and 752–A, the drafters intended offenses defined in the latter section to be treated separately from the other assault offenses.

Furthermore, the comment's statement of the policy behind section 752–A suggests why the exceptions in 17–A M.R.S.A. § 11(5) are inapplicable. Section 11(5) states:

If a statute defining a crime in this code does not expressly prescribe a culpable mental state with respect to some or all of the elements of the crime, a culpable mental state is nevertheless required, pursuant to subsections 1, 2 and 3, unless:

A. The statute expressly provides that a person may be guilty of a crime without culpability as to those elements; or

B. A legislative intent to impose liability without culpability as to those elements otherwise appears.

Section 752–A does not expressly provide for liability without culpability for the element of the prison official. We therefore focus on whether the legislature otherwise indicated its intent to cause that result.

In the past, we have found the requisite legislative intent not to require culpability expressed in the language of the statute and in the overall statutory context, e. g., *State v. Curry*, Me., 420 A.2d 1224, 1226–27 (1980); *State v. Porter*, Me., 384 A.2d 429, 434 (1978). We find no indication of such an intent here. Indeed, we cannot see how imposing liability for assault on a prison official without also requiring knowledge of his identity could further the specific deterrent purpose expressed by the statute. Neither can we understand why an individual who commits an assault on a person he does not know to be an official is any more blameworthy than one who commits an assault punishable under section 207 and is thus any more deserving of the greater punishment for an offense of a higher class.

In its brief, the state quotes at length from the Supreme Court's opinion in *United States v. Feola*, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). There, the Court interpreted a federal statute similar to 17–A M.R.S.A. § 752–A and concluded that the statute did not require knowledge that the person assaulted was a federal official. 420 U.S. at 684, 95 S.Ct. at 1263. The state urges that we adopt the same logic. The Court, though, recognized that the federal statute had two purposes. One was to protect federal officials by granting federal jurisdiction over assaults on them. This jurisdictional purpose, the Court concluded, would best be met by imposing liability without knowledge. In contrast, the other purpose, preventing obstruction of officials, alone would require knowledge. *Id.* at 678–79, 95 S.Ct. at 1260–61.

The dissent, by Justice Stewart, links the second objective to that of state statutes such as ours providing for an increased punishment for assault on public officials. Of these state statutes, Justice Stewart wrote:

These statutes have a two-fold purpose: to reflect the societal gravity associated

with assaulting a public officer and, by providing an enhanced deterrent against such assault, to accord to public officers and their functions a protection greater than that which the law of assault otherwise provides to private citizens and their private activities. Consonant with these purposes, the accused's knowledge that his victim had an official status or function is invariably recognized by the States as an essential element of the aggravated offense. Where an assailant had no such knowledge, he could not of course be deterred by the statutory threat of enhanced punishment, and it makes no sense to regard the unknowing assault as being any more reprehensible, in a moral or retributive sense, than if the victim had been, as the assailant supposed, a private citizen.

*Id.* at 698–99,[3] 95 S.Ct. at 1270–71. Several states have expressed the same conclusion. *See, e. g., State v. Skinner*, 118 Ariz. 517, 578 P.2d 196 (1978); *Dotson v. State*, 358 So.2d 1321 (Miss.1978); *Celmer v. Quarberg*, 56 Wis.2d 581, 203 N.W.2d 45 (1973). The comment to section 752–A suggests that the code drafters applied similar reasoning. Therefore, rather than convincing us of the logic of the state's position, the reasoning of both the majority and dissent in *Feola* further persuades us that our statute was intended to require knowledge of the official status of the person assaulted.

■ As additional support for its interpretation, the state refers us to 17–A M.R. S.A. § 52(2). Section 52 allows in certain circumstances ignorance or mistake to serve as a defense. Subsection 2 states:

Although ignorance or mistake would otherwise afford a defense to the crime charged, the defense is not available if the defendant would be guilty of another crime had the situation been as he supposed.

The state evidently reasons that, because Morey would be guilty of assault if his victim was not a prison official, this section precludes him from benefiting from his possible mistaken identification. It then concludes that ignorance or mistake of the victim's status is never a defense to an offense charged under section 752–A.

Section 52 of the code has escaped judicial definition, and the section's comments do not aid us in discerning how the drafters might approach this problem. Nevertheless, we cannot agree that subsection 2 has the effect urged by the state.

First, as this case illustrates, the state's interpretation of section 52(2) conflicts with the deterrent purpose of section 752–A. If the jury believed Morey's testimony, it could have found that he reacted to what appeared as an unprovoked use of force by someone without authority. Although his conviction under 752–A would not further the deterrent policy underlying that section, according to the state's reasoning Morey would still be subject to its increased penalty if he was guilty of an assault. In addition, following the state's interpretation of section 52(2) a step further, we would have to conclude it unnecessary to prove knowledge of any element of a crime whenever a lesser included offense lacking that element exists. That result, however, too easily circumvents the express provision in section 11 requiring proof of a culpable mental state for each element.

We cannot believe that the drafters intended us to impute the significance to this section proposed by the state where it conflicts with the explicit direction of section 11 and the policy behind section 752–A. Instead, we must interpret the code sections to be consistent and harmonious. *Delano v. City of South Portland*, Me., 405 A.2d 222, 227 (1979). Accordingly, we reject the state's interpretation of the impact of section 52(2).

■ For these reasons, we find that conviction under 17–A M.R.S.A. § 752–A(1)(B) requires the state to prove that the

---

**3.** The majority concurred with Justice Stewart's analysis of the knowledge requirement of the state statutes. *Id.* at 683, 95 S.Ct. at 1263. The Court in *Feola* concluded instead that knowledge was not required there because the federal statute went beyond the state statutes in purpose to encompass the jurisdictional element. *Id.* at 683–84, 95 S.Ct. at 1263.

defendant knew that the victim of his assault was "a member of the staff of the institution or facility."[4] Of course, the state may prove knowledge by circumstantial evidence of the defendant's behavior. Indeed, on the present record, the jury could reasonably find that Morey did know Cayton was an officer. Where the jury did not receive the requested instruction, however, we cannot assume that it made that finding. *State v. Desjardins*, Me., 401 A.2d 165, 171 (1975). Neither can we dismiss the court's failure to give the requested instruction as harmless error. The jury heard Morey state on two occasions that he did not know Cayton's identity. First, Morey described his arrival at the jail:

> Well, I got—Officer Hendsbee was down there. And Sperry had put me in the cruiser and I drove down to Farmington with Officer Hendsbee. And I went all the way—I come in here and I come in the front door. They unhandcuffed me over here where this place is, and I came around down here, Hendsbee stayed there. I don't even know any of them down there. One of the people there, they had plain clothes on, I couldn't tell—it just looks like normal people anyways.

Later, when recounting the events inside the cellblock, Morey stated:

> I was discussing that with Sandy Burke, he was the one that was at the door. And the way I—the way I—it happened, that Cayton came over and grabbed me by the arm. I don't know if I can add this in here, but I'd like to add it. A lot of stuff wouldn't have happened if them people had uniforms on. As far as—I didn't even know who they were. To me they looked like inmates.

> You know, I'm talking to Sandy Burke, he's twenty-two years old, he's dressed just like I am right today when he was in there that night. And I figured that he—I didn't even think he was anything. I didn't think Cayton was anything. They weren't in uniform.

This evidence is sufficient to raise the issues addressed by the requested jury instruction. Although we might not believe Morey's testimony, such credibility determination is properly for the jury on appropriate instruction. In the absence of the requested instruction, we cannot know if the jury even considered whether Morey knew Cayton was an officer. Yet in the face of this evidence, defendant was entitled to a jury determination of that factual issue. Therefore, we must vacate Morey's conviction for the offense of assault on a police officer.

Because of our decision to vacate the judgment, we find it unnecessary to reach the other issues raised by the defendant on his assault conviction. He does raise three contentions concerning his conviction for disorderly conduct under 17-A M.R.S.A. § 501(2) to which we must respond.[5]

First, the defendant challenges the sufficiency of the evidence of disorderly conduct and contends that the court erred by refusing to grant his motion for acquittal. We find, on the contrary, that the evidence was clearly sufficient. The arresting officer testified that, after he separated Morey and O'Neal outside the motel, Morey returned and attempted to renew the fight. The jury could properly conclude from this evidence that he had committed the offense of disorderly conduct.

---

4. We recognize that the facial difference in the language of subsections (A) and (B) of § 752-A may be considered to be some evidence of a different requirement in respect to culpable state of mind under each of them. We are satisfied that the other factors considered in the foregoing analysis mandate the conclusion that the Legislature did not intend to abrogate under subsection (B) the requirement that the defendant have knowledge that the victim of the alleged assault was "a member of the staff of the institution or facility," thus overriding the force of any inference to be drawn from the facial disparity.

5. 17-A M.R.S.A. § 501(2) provides:

A person is guilty of disorderly conduct if:
2. In a public or private place, he knowingly accosts, insults, taunts or challenges any person with offensive, derisive or annoying words, or by gestures or other physical conduct, which would in fact have a direct tendency to cause a violent response by an ordinary person in the situation of the person so accosted, insulted, taunted or challenged....

 Second, the defendant contends that the court erred by failing to instruct the jury that voluntary intoxication could be a defense to the crime of disorderly conduct. *See* 17–A M.R.S.A. § 58–A. He did not request this instruction at trial, so we can recognize only obvious error. M.R. Crim.P. 30(b), 52(b). The evidence, including Morey's own testimony, does not suggest that he was sufficiently intoxicated to negate the culpable state of mind required for disorderly conduct. Therefore, the absence of this instruction was not error.

 Finally, Morey argues that the jury instructions on the elements of disorderly conduct impermissibly exceeded the scope of the indictment. The indictment described Morey's criminal action outside Roger's Motel as: "knowingly challeng[ing] Michael O'Neal with physical conduct which would in fact have a direct tendency to cause a violent response by an ordinary person . . ., namely, by attempting to hit or strike the said Michael O'Neal." At trial, when describing the elements of the offense, the court relied on the statutory definition to include "gestures and other physical conduct" having a tendency to cause a violent response by the person "so accosted, taunted, or challenged." The defendant concludes that this instruction was unfair because, by including actions in the statutory definition of the offense not specified in the indictment, it exceeded the charge he was prepared to defend against.

The defendant did not object to this instruction at trial, although given an opportunity to do so. There was no obvious error. The indictment adequately informed Morey of the charge against him. The state's evidence showed that Morey did take a swing at O'Neal. Any variation between the terms of the indictment and the court's instructions was harmless.

Accordingly, we find no error in Morey's conviction for disorderly conduct, and we affirm that conviction.

The entry shall be:

Judgment of conviction for disorderly conduct affirmed.

Judgment of conviction for assault on an officer set aside.

Remanded for further proceedings consistent with the opinion herein.

All concurring.