UNITED STATES of America, Appellee,

v.

John Pietro MANELLI, Appellant.

Nos. 81–1389, 81–1781.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1981.

Decided Dec. 23, 1981.

As Modified on Denial of Rehearing and
Rehearing En Banc March 30, 1982.

Douglas W. Thomson (argued), Robert D. Goodell, Douglas W. Thomson Law Firm, St. Paul, Minn., for appellant.

John M. Lee, U. S. Atty., Ann D. Montgomery (argued), Asst. U. S. Atty., D. Minnesota, Minneapolis, Minn., Dwight L. Pringle, Legal Intern, James M. Rosenbaum, U. S. Atty., Minneapolis, Minn., Christine M. Chale, Legal Intern, for appellee.

Before ROSS and STEPHENSON, Circuit Judges, and HOWARD,* District Judge.

STEPHENSON, Circuit Judge.

Appellant brings two appeals which were consolidated for briefing and submission to this court. Number 81–1781 is a direct appeal by defendant of his jury conviction of assaulting a federal officer with an automobile, in violation of 18 U.S.C. §§ 111 and 1114. The district court[1] imposed a sentence of six years imprisonment. Defendant's sole claim in this appeal is that the evidence was insufficient as a matter of law to prove beyond a reasonable doubt that he entertained the requisite specific intent to assault Special Agent Meyer of the Federal Bureau of Investigation. We affirm the conviction.

In No. 81–1389, defendant claims that his Rule 41(e) motion for return of property seized by the United States should have been granted because it was illegally seized; there was no proof it was stolen; it is not otherwise forfeitable and it is inadmissible as evidence in any criminal trial. We remand for further consideration of the district court's refusal to order the return of the seized property.

### No. 81–1781 (Appeal of Conviction)

The evidence disclosed that appellant Manelli was under surveillance[2] by special agents of the Federal Bureau of Investigation, including Special Agent Meyer, at the time of the alleged willful assault on Meyer by Manelli with an automobile.

Special Agent Meyer, accompanied by Special Agent Gigler, first observed Manelli driving a maroon Plymouth near Lake Calhoun in Minneapolis. It was around noon. Suddenly Manelli increased his speed and ran a red light. A chase ensued. Meyer activated his siren and his partner, Agent Gigler, activated a red light. In addition, another surveillance vehicle activated a portable, flashing, red light. Eventually Manelli blew a tire and spun his vehicle striking an elderly pedestrian. Agent Meyer then pulled up in front of Manelli's auto trying to block him from further escape. Meyer then exited his vehicle with his weapon drawn and approached Manelli's vehicle and shouted, "FBI, stop the car." Manelli then drove his vehicle directly toward Agent Meyer, coming within five feet of him. Agent Meyer jumped aside and fired five shots at the Manelli vehicle which passed by and continued down Lake Street where it was eventually stopped by Agent Nelson in another FBI vehicle. Manelli was then placed under arrest by Agent Nelson.

Appellant Manelli contends the evidence was insufficient as a matter of law to establish his specific intent to assault Agent Meyer. Specific intent is an essential element of the crime of assaulting a federal officer in the performance of his duties. *United States v. Feola*, 420 U.S. 671, 686, 95 S.Ct. 1255, 1264, 43 L.Ed.2d 541 (1975).

The district court properly instructed the jury that the government was required "to prove beyond a reasonable doubt that [Manelli] aimed his automobile at FBI Agent Meyer, with the specific intent to use the vehicle as a dangerous weapon."

Manelli contends that the only reasonable inference that can be drawn from the evidence is that he was trying to escape from a life-threatening situation. He argues that the FBI agents did very little to communi-

---

* The Honorable George Howard, Jr., United States District Judge for the Western District of Arkansas, sitting by designation.

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

2. The reason for the surveillance was not disclosed in the criminal trial because it was not relevant and would have been highly prejudicial. However, the original district court files disclose that on October 22, 1980, the Paine Art Center in Oshkosh, Wisconsin, was burglarized and various items of jewelry stolen having a total value of approximately $3 million. Manelli was a suspect. On January 27, 1981, the insurers agreed to repurchase stolen items for $300,000. The "buy-back" occurred that morning at the North Star Inn in Minneapolis. Shortly thereafter FBI agents observed Manelli transferring an object from a Jeep Cherokee vehicle to a maroon Plymouth. Thereafter the surveillance and the incidents which led to the alleged assault were described in the criminal trial.

cate their identity to him and he was not aware of their identity until after his car was rammed by Agent Meyers. Furthermore, he contends that evidence indicates that Agent Meyer was not in front of his car at the time he drove forward as claimed by the government.

We, of course, must view the evidence in the light most favorable to the jury's finding of guilt. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). All reasonable inferences which tend to support the jury's verdict must be taken as established. *United States v. Overshon*, 494 F.2d 894, 896 (8th Cir. 1974). We are satisfied that the evidence amply supports the jury's finding that Manelli intended to assault Agent Meyer with his automobile as charged in the indictment. The conviction is affirmed.

### No. 81–1389 (Motion for Return of Seized Evidence)

The record at the suppression hearing before the United States magistrate disclosed that after Manelli was placed under arrest, Agent Nelson noticed that Manelli's vehicle was smoking both front and rear. He took the keys from the ignition, opened the trunk and removed therefrom a duffel bag. Nelson opened the duffel bag and noted it contained clothing and a small white nylon bag containing numerous packets of $100 bills. He shut the bag and took it to the FBI office where the contents were inventoried and found to include $250,000 in cash. The record does not disclose how the vehicle was removed from the scene but the government has custody of it.

After having been warned of his *Miranda* rights, Manelli told the FBI agents at the downtown office that he had borrowed the car from an individual he did not know. Thereafter he removed some papers from his pocket and produced a storage rental agreement which contained the name of Mike Ferren. Manelli then stated that he had borrowed the car to do some work for Ferren at a mini-storage location.

The government stated at the suppression hearing it had no intention of using the contents of the duffel bag as part of its evidence at the assault trial. The motion to suppress the contents of the bag was, therefore, denied.

Manelli also moved, pursuant to Rule 41(e) Fed.R.Crim.P., for the return to him of the money held by the United States which he alleges was unlawfully seized by agents of the FBI. In his written report and recommendation to the court, the magistrate stated:

> Defendant also moves for the return of the money pursuant to Rule 41(e), Federal Rules of Criminal Procedure. The motion does not assert that the money belongs to defendant and there are no facts or affidavits showing that the money is in fact his. The record does show that defendant was not the owner of the car from which the money was seized, and that defendant did not even know the name of the owner of the car. Indeed, defendant was only able to furnish the name of the possible owner of the car after referring to a "storage rental agreement" which he had in his pocket. The true owner of the money is clearly in doubt.

The district court, after a de novo review of the magistrate's report, findings and recommendations, denied Manelli's motion for return of the seized property.

Appellant Manelli argues that his Rule 41 motion for return of property should have been granted because the property was illegally seized; there is no proof it was stolen; it is not otherwise forfeitable; and it is inadmissible as evidence in any criminal trial. The government's response is that appellant is not entitled to return of property when he has failed to show lawful entitlement to the property and the property is needed for evidentiary reasons in a pending criminal investigation.[3]

**3.** Appellee, in its initial brief, stated, "[t]he government is in possession of additional evidence concerning ownership of the seized mon-

ey. It is felt public disclosure of these facts could compromise the continuing investigation of the interstate transportation of stolen prop-

A person aggrieved by an unlawful search and seizure may move for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized.[4] Both parties cite *United States v. Wright*, 610 F.2d 930 (D.C.Cir.1979), in support of their position. That court held in substance that illegally seized property must be returned pursuant to a Rule 41(e) motion if it is not stolen, contraband, otherwise forfeitable, and which is not needed, or is no longer needed, as evidence. *Id.* at 939 (quoting *United States v. Wilson*, 540 F.2d 1100, 1101 (D.C. Cir.1976).

The *Wright* case, *supra*, cites *United States v. Palmer*, 565 F.2d 1063 (9th Cir. 1977), and *United States v. LaFatch*, 565 F.2d 81 (6th Cir. 1977), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978). In *Palmer*, the appellant sought the return of $763 which was seized from him after a bank robbery for which he was convicted. The court concluded that in the absence of any cognizable claim of ownership or right to possession adverse to appellant, the district court should have granted him the money taken from him by government seizure.

In *United States v. LaFatch, supra*, the appellant had been acquitted of charges that he extorted $50,000. He sought return of the money. The court noted that the

---

erty charge. If the Court desires, the government is prepared to make these disclosures *in camera*."

At oral argument the government disclosed that subsequent to the hearing on the pre-trial motions, government counsel advised the magistrate *in camera* that the government possessed additional information that was dispositive of the issue of whether the appellant was entitled to the return of the $250,000. The information was provided to the magistrate *in camera* to protect the confidentiality of the investigation and to protect the identity of informants. The information was then orally disclosed to the magistrate. Government counsel indicated they did not know whether or not the district court was advised of the *in camera* information.

Since defense counsel was not notified of the submission of *in camera* material to the court, we invited counsel for both parties to submit additional briefs regarding the effect of the oral disclosure of the *in camera* materials to the magistrate and the district court. Appellant vigorously protests the *in camera* disclosure as a violation of Manelli's right to fundamental fairness and to a disinterested and impartial tribunal under the due process clause and a breach of professional ethics. The government responded that the *in camera* information was provided to the magistrate because it was dispositive of appellant's entitlement to the return of the $250,000, an issue the appellant had raised by the filing of a Rule 41(e) motion. The information was entirely extraneous to the assault trial and conviction and was not alluded to in any fashion at appellant's trial. The decision to review *in camera* the information relating to the on-going "theft" investigation was within the discretion of the district court.

We have examined *in camera* affidavits concerning the contents of the oral communications made to the magistrate. For the purpose of this appeal, we assume the magistrate conveyed this information to the district court. As indicated in the government's initial brief, the *in camera* material indicates the government possesses additional evidence concerning ownership of the seized money and the disclosure of these facts could compromise the continuing investigation of the interstate transportation of stolen property charge.

In a pre-trial hearing where the issue is probable cause and not the guilt or innocence of the accused, the government's interest in the protection of the identity of its informants may well outweigh the defendant's need to know. *McCray v. Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967). *See Giordano v. United States*, 394 U.S. 310, 314, 89 S.Ct. 1163, 1165, 22 L.Ed.2d 297 (1969) (Stewart, J., concurring). We have held that an *in camera*, *ex parte* review of government applications and affidavits in opposition to a motion to suppress evidence is within the district court's discretion, where the documents contained information which, if revealed, would undermine an on-going investigation and threaten the status of crucial informants, as in the instant case. *Melickian v. United States*, 547 F.2d 416, 420–21 (8th Cir. 1977).

It is our view that the government should have informed defendant's counsel that *in camera* information was being furnished the United States magistrate concerning the on-going investigation.

---

4. Rule 41(e) Fed.R.Crim.P. provides in relevant part:

A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized.

interests of judicial efficiency dictate that the problem should be resolved by the criminal trial court but that the issue could be decided in a subsequent civil action, citing *United States v. Wilson, supra,* 540 F.2d at 1104. The *LaFatch* court remanded the issue as to the rightful ownership of the funds for an evidentiary hearing stating:

The acquittal of LaFatch in the criminal proceedings does not necessarily mean that he is the rightful owner of the money. In the criminal proceedings the jury determined that the evidence was not sufficient to establish the guilt of La-Fatch beyond a reasonable doubt. The right to ownership of the money, on the other hand, need be established only by the preponderance of the evidence.

*United States v. LaFatch, supra,* 565 F.2d at 84–85.

■ We are persuaded that this case must be remanded to the district court for the purpose of permitting the district judge to examine the record before the magistrate and accept such additional evidence as either party may wish to offer, and then determine whether or not the money should be returned to defendant without reference to, or reliance on, the *in camera* material. If Judge MacLaughlin has been informed of the nature of the *in camera* material, the case should be assigned to a district judge who has not been advised of the nature of the *in camera* material.

Remanded accordingly.