647 P.2d 406

**STATE of New Mexico, Petitioner,**

v.

**Dorothy LUCERO, Respondent.**

No. 13922.

Supreme Court of New Mexico.

June 24, 1982.

Jeff Bingaman, Atty. Gen., Marcia E. White, Asst. Atty. Gen., Santa Fe, for petitioner.

Michael Dickman, Appellate Defender, Ellen L. Bayard, Asst. Appellate Defender, Santa Fe, for respondent.

## OPINION

RIORDAN, Justice.

Dorothy Lucero (Defendant) was convicted of child abuse. § 30–6–1(C), N.M.S.A. 1978 (Cum.Supp.1981). She appealed alleging that the child abuse statute was unconstitutional and that the trial court erroneously excluded testimony by Defendant's expert witness, Dr. Salazar, on the issue of duress. The Court of Appeals held the statute constitutional, but reversed Defendant's conviction, and granted her a new trial because of the exclusion of the expert witness' testimony. We granted certiorari, and we affirm in part and reverse in part.

We affirm the Court of Appeals in upholding the constitutionality of the statute. However, we reverse on the question

of whether duress is a defense to the crime of child abuse.

Defendant is the unmarried mother of two children, Arthur almost five years old and Jose six months. At the time of the trial, Defendant was pregnant with her third child. Defendant gave birth to Arthur when she was sixteen years old. Two years later, Arthur's father died in an automobile accident. About six months later, Defendant met Eddie Lucero (Eddie). Several months thereafter, Defendant and Eddie began living together; however, they have never married. Defendant claims that while they were living together Eddie beat her. On one occasion, he broke her jaw. However, Defendant continued to live with Eddie.

Neither Defendant nor Eddie were employed. They lived on Defendant's "income" which came from public assistance. Defendant, however, testified that she would never give Eddie any of her money, which she believed is why Eddie always beat her up.

After Defendant gave birth to Jose, Eddie's child, Eddie began hitting Arthur. Defendant admitted knowing about this, but denied seeing the abuse take place. She stated that she would "yell" at Eddie after such an incident. She also testified that she could not contact the police or get help for Arthur because Eddie threatened to inflict more harm on her and Arthur.

Defendant's mother, who took care of Arthur frequently, finally took Arthur to the hospital's emergency room to have some marks on his body evaluated. Dr. Sidney Schnidman, who examined Arthur, found:

1. a partial thickness burn on the left ear, and the hair around the burn singed; he surmised that a flame or fire had caused the burn to his ear.
2. multiple bruises on both cheeks.
3. laceration/cut of the lower lip that was partially healed.
4. scratches in the middle of the neck under the jaw.
5. three small round bruises on the left upper arm.
6. bruises on the right shoulder.
7. bruises on the thigh and knee cap.
8. multiple redden areas on and between his buttocks.
9. circumferential marks/abrasions on both ankles.
10. peeled and cracked skin on both feet; the doctor testified that he has seen this injury before in relation to emersion into a hot liquid.

The doctor was of the opinion that the bruises were *not* caused at the same time, because of the color of the different bruises. As a result, Defendant was charged with child abuse of Arthur.

At trial, out of the jury's presence, Dr. Salazar, a psychologist, testified that Defendant acted under duress in not seeking help for Arthur because of her fear of Eddie.

The trial judge ruled that Dr. Salazar's testimony on the issue of duress was inadmissible because Defendant's intent was immaterial to the charge of child abuse.

Section 30–6–1(C) reads:

Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be:

(1) placed in a situation that may endanger the child's life or health; or

(2) tortured, cruelly confined or cruelly punished * * *.

Whoever commits abuse of a child is guilty of a fourth degree felony, unless the abuse results in the child's death or great bodily harm, in which case he is guilty of a second degree felony.

*State v. Lucero,* 87 N.M. 242, 531 P.2d 1215 (Ct.App.), *cert. denied,* 87 N.M. 239, 531 P.2d 1212 (1975), held that the child abuse statute, Section 40A–6–1, N.M.S.A. 1953 (2nd Repl. Vol. 6, Supp. 1973) (which has been recodified as § 30–6–1, N.M.S.A. 1978 (Cum.Supp.1981)), is a strict liability statute. Since then *State v. Coe,* 92 N.M. 320, 587 P.2d 973 (Ct.App.), *cert. denied,* 92 N.M. 353, 588 P.2d 554 (1978); *State v. Fuentes,* 91 N.M. 554, 577 P.2d 452 (Ct.

App.), *cert. denied*, 91 N.M. 610, 577 P.2d 1256 (1978); *State v. Gutierrez*, 88 N.M. 448, 541 P.2d 628 (Ct.App.1975), have reiterated this position.

■ "A strict liability statute is one which imposes criminal sanction for an unlawful act without requiring a showing of criminal intent." *Lucero, supra*, at 244, 531 P.2d at 1217. Thus, the sole question for the jury in a strict liability offense is whether the jury believes the defendant committed the act prescribed by the statute. If it finds that the defendant did commit the act, then the jury is obliged to bring a guilty verdict. Wasserstrom, *Strict Liability in the Criminal Law*, 12 Stan.L. Rev. 731 (1959–1960).

■ At common law, crimes involved a showing of criminal intent. *State v. Brown*, 72 N.M. 274, 383 P.2d 243 (1963). However, the Legislature may forbid the doing of an act and make its commission criminal without regard to the intent of the wrongdoer. *Id.; State v. Gunter*, 87 N.M. 71, 529 P.2d 297 (Ct.App.), *cert. denied*, 87 N.M. 48, 529 P.2d 274 (1974), *cert. denied*, 421 U.S. 951, 95 S.Ct. 1686, 44 L.Ed.2d 106 (1975); *State v. Vickery*, 85 N.M. 389, 512 P.2d 962 (Ct.App.), *cert. denied*, 85 N.M. 380, 512 P.2d 953 (1973). The general presumption is in favor of upholding such a statute. *State v. Coe, supra.*

■ The rationale for a strict liability statute is that the public interest in the matter is so compelling or that the potential for harm is so great, that public interests override individual interests. *Lucero, supra. Lucero* held the child abuse statute to be a strict liability statute because of the obvious public interest of prevention of cruelty to children. Therefore, in the strict liability crime of child abuse it makes no difference whether the defendant acted intentionally or negligently in committing the act. *Id. supra.*

■ Since child abuse is a strict liability offense, a defendant's criminal intent is not required to be proven as an element of child abuse. *State v. Fuentes, supra.* In *Fuentes*, the defendant was convicted of child abuse that resulted in the death of a child. The defendant requested that the trial court give a jury instruction on mistake of fact. The Court of Appeals held that since the defendant's state of mind was not essential to the crime of child abuse, mistake of fact was not a defense; therefore, the denial of the jury instruction by the trial court was proper.

Defendant asserts that she acted under duress in not obtaining help for Arthur. Duress is defined as " '[a]n act committed under compulsion, such as *apprehension* of serious and immediate bodily harm, is involuntary and, therefore, not criminal.' " *State v. Lee*, 78 N.M. 421, 423, 432 P.2d 265, 267 (Ct.App.1967) (emphasis added) (quoting *Castle v. United States*, 347 F.2d 492, 494 (D.C.Cir.1964)). Apprehension in the mind of a defendant, is obviously a mental state.[1] Defendant claims that her failure to act was a result of the *fear* and *belief* that Eddie would hurt her and Arthur to a greater extent if she obtained help for Arthur.

Defendant relies on *Esquibel v. State*, 91 N.M. 498, 576 P.2d 1129 (1978), which held that "duress is a defense available in New Mexico except when the crime charged is a homicide or a crime requiring intent to kill." *Id.* at 501, 576 P.2d at 1132. This language was taken from USE NOTE 1 of N.M.U.J.I. Crim. 41.20, N.M.S.A.1978 (Cum. Supp.1981).

■ The U.J.I. USE NOTE specifically states "[f]or use when duress is a defense. . . ." In the strict liability crime of

---

1. In N.M.U.J.I. Crim. 41.20, N.M.S.A.1978 (Cum.Supp.1981), the duress instruction uses the words "defendant fears". In *State v. Davis*, 27 Wash.App. 498, 618 P.2d 1034 (Ct.App. 1980), a jury instruction was given which was almost a verbatim adaptation of Washington's duress instruction, used the words "apprehension in the mind of the defendant". In *State v.* *Starks*, 122 Ariz. 531, 596 P.2d 366 (1979), duress is defined using the words "reasonable person would believe". Lastly, in *State v. Ellis*, 232 Or. 70, 374 P.2d 461 (1962), the court in reference to the duress issue, talks about the "fear which defendant claims he experienced". All of the above examples refer to a mental state.

child abuse, duress is not a defense; thus, the defense is not applicable to this case. The holding in *Esquibel* only applies when duress is a defense. However, like mistake of fact, duress is not a defense to child abuse because the mental state of the defendant is not essential. Child abuse does not require an intent. *State v. Gutierrez, supra.* Therefore, duress is not a defense to the crime of child abuse. Dr. Salazar's testimony was properly excluded.

We reverse the Court of Appeals on the duress issue and reinstate the Defendant's conviction.

IT IS SO ORDERED.

EASLEY, C. J., SOSA, Senior Justice, and PAYNE and FEDERICI, JJ., concur.