**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: _____**

**Filing Date: August 26, 2013**

**Docket No. 29,227**


**STATE OF NEW MEXICO,**

      **Plaintiff-Appellee,**

**v.**

**WAYNE BENT,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF UNION COUNTY**
**Gerald E. Baca, District Judge (by designation)**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

Law Works L.L.C.
John A. McCall
Albuquerque, NM

for Appellant

**OPINION**

**KENNEDY, Chief Judge.**

**{1}** The Opinion previously filed in this matter on August 15, 2013 is hereby withdrawn, and the following Opinion is being issued in its place.

**{2}** Wayne Bent (Defendant) appeals his conviction for criminal sexual contact with a minor and two convictions of contributing to the delinquency of a minor. Defendant was the leader of a religious group, and his convictions were based on unclothed experiences with

1

two teenage girls who were members of the community, which he claimed were purely spiritual healings. In a previous opinion, we reversed his convictions based on problems with the grand jury indictment. The New Mexico Supreme Court reversed and instructed this Court to consider the rest of Defendant's arguments on remand.

**{3}**     Defendant's remaining issues on appeal are numerous. Defendant argues that (1) the district court excluded certain witnesses, photographs, and his closing presentation soundtrack; (2) the prosecution wrongly exceeded the scope of direct examination on its cross-examination; (3) his proposed jury instructions regarding lawfulness were erroneously denied; (4) there was insufficient evidence to convict him of the crimes charged; (5) his counsel was ineffective by failing to raise a defense under New Mexico's Religious Freedom Restoration Act (RFRA); and (6) he was deprived of a fair trial by cumulative error. We see no error and affirm.

## I.     BACKGROUND

**{4}**     Defendant was the spiritual leader of a religious group that lived together on an area of land in northern New Mexico. Two teenage sisters, L.S. and A.S., each paid a visit alone to Defendant and lay in his bed naked with him. Whether he touched L.S. and A.S. illegally during their visits, and whether the events were religiously motivated or the result of coercion was disputed below and on appeal. Defendant was indicted by a grand jury on two counts of criminal sexual contact with a minor (CSCM) and two counts of contributing to the delinquency of a minor (CDM). He was acquitted of one count of CSCM and convicted on the remaining charges.

## II.     DISCUSSION

### A.     Limitation of Defendant's Witnesses And Evidence Was Not Error

**{5}**     Defendant argues that he was not allowed to present his desired evidence due to time constraints imposed by the district court and, specifically, he was not permitted to present his full list of witnesses. He claims on appeal that this prevented him from presenting any female members of the community he led, including L.S.'s and A.S.'s aunt and grandmother with whom the sisters lived. Defendant also disputes the district court's exclusion of some of the photographs offered into evidence. The State argues that the district court properly granted its motion to exclude what it deemed to be cumulative witnesses. "The admission or exclusion of evidence is within the discretion of the [district] court. On appeal, the [district] court's decision is reviewed for abuse of discretion." *State v. Downey*, 2008-NMSC-061, ¶ 24, 145 N.M. 232, 195 P.3d 1244 (internal quotation marks and citation omitted).

**{6}**     Rule 11-403 NMRA permits a court to exclude relevant evidence if its probative value is outweighed by the danger of, among several things, "needless presentation of cumulative evidence." *City of Albuquerque v. Westland Dev. Co.*, 1995-NMCA-136, ¶ 27,

121 N.M. 144, 909 P.2d 25 (internal quotation marks and citation omitted). "[T]he [district] court in its discretion may properly exclude cumulative evidence." *State v. Marquez*, 1998-NMCA-010, ¶ 24, 124 N.M. 409, 951 P.2d 1070.

{7}     Defendant attempted to present several members of the community as witnesses to testify to the general nature of the touching they observed in the healing rituals of their religion, none of whom were teenage girls or others who had been touched in a similar manner as L.S. and A.S.  The district court permitted "one, maybe two," because it did not want "eight or nine people saying the same thing."  The district court ruled that L.S.'s and A.S's grandmother and aunt also could not testify because they were only offered for "unrelated experiences" that did not deal with the issues being tried.  Defendant did not argue before or after this ruling that the grandmother and aunt had relevant testimony that was non-cumulative.  He raised that argument for the first time on appeal.  As well, Defendant did not argue at trial that the eight or nine witnesses had individualized experiences about healing rituals.  By failing to argue or make an offer of proof below that the witnesses had distinct, non-cumulative testimony, Defendant failed to preserve this argument.  In order to preserve an issue for appeal, a defendant must make a timely objection or motion that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon. *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280.  A party may claim that evidence was excluded in error only if it affects a substantial right of the party, and "the party informs the court of its substance by an offer of proof, unless the substance was apparent from the context."  Rule 11-103(A)(2) NMRA. Without such an objection to the district court's exclusion of the cumulative witnesses or submission of an offer of proof, we affirm the district court's decision as it did not abuse its discretion.

{8}     Defendant makes a similar argument with respect to numerous photographs he attempted to admit into evidence.  Again, he fails to show, with any particularity, how the photographs would have been non-cumulative.  A nearly identical situation arose in *Westland Development* when "[t]he court examined a box of pictures offered by Westland and required Westland to pick the five best representatives of what it wanted to show[.]" 1995-NMCA-136, ¶ 30.  We affirmed the district court in that case because Westland failed to establish why the unadmitted photographs were not needlessly cumulative. *Id.* Here, again, Defendant failed to articulate both in district court and on appeal how the excluded photographs were non-cumulative.  Rule 11-103(A)(2).  We affirm the district court's decision on the photographs as it was not an abuse of discretion.

{9}     Defendant's final argument in this vein is that he was prevented from playing, and the jury was prevented from hearing, a song during his closing presentation.  He intended the song to be the soundtrack to a video slideshow of photographs that had been admitted into evidence.  The district court sustained the State's objection to the song, asking that the sound be turned off, although permitting the slideshow to play.  Defendant argues on appeal that this prejudiced him in front of the jury and disrupted his closing.  He does not explain further how this refusal to allow the audio track prejudiced him and, at the time, his only

argument was "[i]t's just commentary[.]" "Because district judges are in the best position to assess the impact of any questionable comment, we afford them broad discretion in managing closing argument." *State v. Ramos-Arenas*, 2012-NMCA-117, ¶ 16, 290 P.3d 733 (alteration, internal quotation marks, and citation omitted), *cert. denied*, 2012-NMCERT-010, 297 P.3d 332. Without further explanation from Defendant as to the relevance or necessity of musical accompaniment to his slideshow or, more specifically, regarding the alleged prejudice to his case, we defer to the district court and affirm the decision to refuse the playing of new musical material during closing argument.

**B.     The Prosecution Did Not Exceed the Scope of Direct Examination on Cross-Examination**

**{10}**     We next consider whether the State exceeded the scope of direct examination when it cross-examined Defendant. "The general rule upon the scope of cross-examination . . . is that the examination can only relate to the facts and circumstances connected with the matters stated in the direct examination of the witness." *State v. Carter*, 1915-NMSC-084, ¶ 8, 21 N.M. 166, 153 P. 271 (internal quotation marks and citation omitted). It is well settled that in cross-examination,

> [f]or the purpose of testing the credibility of a witness, it is permissible to investigate the situation of the witness with respect to the parties and to the subject of litigation, his interest, his motives, inclinations, and prejudices, his means of obtaining a correct and certain knowledge of the facts to which he bears testimony, the manner in which he has used those means, his powers of discernment, memory, and description.

*Id.* ¶ 13. The district court has broad discretion to control the scope of cross-examination, *see State v. Martin*, 1984-NMSC-077, ¶ 20, 101 N.M. 595, 686 P.2d 937, including the discretion to control cross-examination to ensure a fair and efficient trial. *Sanchez v. State*, 1985-NMSC-060, ¶ 6, 103 N.M. 25, 702 P.2d 345, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, 272 P.3d 110.

**{11}**     The scope of Defendant's direct examination was very limited. Defense counsel only asked Defendant questions regarding whether he touched L.S. and A.S. when they came to his house, and whether he would generally ever encourage delinquency in a minor. On appeal, Defendant specifically identifies a few places in cross-examination that he claims exceeded the scope of direct. Defendant states that the prosecution's questions about his position of spiritual authority were improper, particularly those in relation to statements he made in a television special filmed about his community. Defense counsel objected generally to several of the State's questions about a two-minute long video segment containing an interview of Defendant. The district court expressed its concern with the State's attempt to impeach Defendant by referring to prior interviews and instructed the State to first make Defendant state his current position on the question before impeaching him with a prior inconsistent statement. Ultimately, the district court took a recess and instructed

4

the State to use the time to review the video interview. After the State reviewed the video, the prosecution proceeded without further objections as to the scope of cross-examination or improperly referring to the video interview. The district court later overruled new objections from defense counsel that Defendant was being questioned about a lack of prior statements consistent with his position, as Defendant could address the matter on redirect. The State's clumsy questions related to Defendant's conduct were corrected by the district court and did not amount to "improper argumentative questioning of . . . Defendant in front of the jury" as Defendant claims. The conferences between counsel and the district court were extensive enough that the jury was sometimes sent out of the room. However, the cross-examination did not exceed the scope of Defendant's direct examination in a way that amounts to trial error.

**{12}** We focus on the scope of cross-examination because that is how Defendant frames his appeal. "Ordinarily[,] the scope of cross-examination should be limited to facts and circumstances connected with matters inquired of in direct examination. An exception to this limitation is where the cross-examination tends to discredit or impeach the witness or shows his bias or prejudice." *State v. Mireles*, 1972-NMCA-105, ¶ 18, 84 N.M. 146, 500 P.2d 431. Here, as we described above, the State was attempting to discredit or impeach the witness.

**{13}** We reiterate that the district court has broad discretion over cross-examination. *State v. Smith*, 2001-NMSC-004, ¶ 23, 130 N.M. 117, 19 P.3d 254 (stating that "the [district] court has broad discretion to control the scope of cross-examination"). None of this questioning exceeds the scope of cross-examination, which can include questioning designed to impeach the witness. Defendant could properly be questioned about his conflicting statements and about the factual circumstances to which they related. We conclude that the district court did not abuse its discretion in permitting the State to question Defendant on his prior statements about whether he had touched L.S. and A.S.

**C.     The District Court Did Not Err in Refusing Some of Defendant's Proposed Jury Instructions**

**{14}** Defendant next argues that the district court erred in denying four of his requested jury instructions. First, Defendant wanted to define the term "breast," which he states is not defined in the context of the CSCM statute with which he was charged or any CSCM case law. Second, Defendant argues that the jury should have been given a "[m]istake of [f]act" or "unlawfulness" instruction that he believed he was touching L.S. and A.S. for a religious purpose. Defendant also argues that this should have been the subject of an "unlawfulness" instruction, in which he wanted to instruct the jury that "CSC does not include a touching for purposes of religious beliefs." Finally, he argues that it was error by the court to refuse and modify his proffered intent instruction. "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996.

**{15}** Defendant argues that "breast" could mean "entire frontal section of the body," or "the entire area where the female and male breasts are conjoined." Defendant submitted an unnumbered jury instruction to the court that contained his definition of "breast." The district court wrote on the page that the instruction was "[n]ever requested and never given." Defendant fails to point us to any part of the record where he pursued the matter. The jury instruction for CSCM in the second degree defines several body parts. UJI 14-926 NMRA; UJI 14-981 NMRA. However, the committee commentary explains that "[d]efinitions for 'breast' . . . were not included because these terms are in common usage and have a commonly understood meaning." UJI 14-981 comm. cmt.

**{16}** We find no record of this definition being specifically requested in the remainder of the record. Defendant cites to a part of the record in which he opposed the inclusion of the word "breast" in another instruction. However, there was no discussion of the issue of the word's definition at that point either. Therefore, we conclude that the issue of the definition of "breast" was not adequately preserved, and we do not consider Defendant's arguments. *Varela*, 1999-NMSC-045, ¶ 25 ("In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the [district] court to the claimed errors or errors, and that a ruling thereon then be invoked." (internal quotation marks and citation omitted)). We hold that no error was made by the district court on this issue.

**{17}** We next address Defendant's proposed mistake of fact instruction. We agree with the State that Defendant is actually arguing a "mistake of law" defense. The disputed instruction offered by Defendant at trial states that "[t]he burden is on the [S]tate to prove beyond a reasonable doubt that . . . [D]efendant did not act under an honest and reasonable belief in the existence of those facts [that the touching of L.S. and A.S. was a religious act]." This instruction does not claim a mistake of fact. Rather, it concedes the touchings while stating a legal justification. "A mistake of law is a mistake about the legal effect of a known fact or situation, whereas a mistake of fact is a mistake about a fact that is material to a transaction; any mistake other than a mistake of law." *State v. Hubble*, 2009-NMSC-014, ¶ 22, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted). Defendant does not dispute his actions in this instruction. Instead, he disputes the fact of his understanding of the legality of his actions. Legal justification is not a factual matter. As we discuss below in response to Defendant's vagueness and statutory defense arguments, there is no legal exception to CSCM based on a religious purpose for the contact. It is well established that "[n]o instruction on [mistake of law] shall be given." UJI 14-5121 NMRA Use Note 1. "When a person voluntarily does that which the law forbids and declares to be a crime, it is no defense that he did not know that his act was unlawful or that he believed it to be lawful." UJI 14-5121.

**{18}** Defendant's unlawfulness and intent arguments stem from a single premise that because he believed that touching L.S. and A.S. was a religious act, he was not guilty of committing a crime. The CSCM statute limits the offense to instances where the touching is unlawful and, specifically, exempts touching for non-abusive medical treatment and

6

parental care.

> We begin our analysis by noting that the [criminal sexual penetration of a minor (CSPM)] and CSCM statutes specifically limit the application of such offenses to instances wherein [the] defendant's conduct in touching or penetrating the child is "unlawful" or "unlawfully" committed. The terms "unlawful" or "unlawfully" limit the scope of prohibited conduct to those acts that are without legal justification or excuse.

*State v. Pierce*, 1990-NMSC-049, ¶ 12, 110 N.M. 76, 792 P.2d 408. "Neither CSPM nor CSCM prohibit the touching or penetration of the intimate parts of a minor for purposes of providing reasonable medical treatment to a child, nor do they criminalize non[-]abusive parental or custodial child care." *Id.* The statute specifically exempts "medically indicated procedures[,]" and the case law makes clear that non-abusive care is also not unlawful. NMSA 1978, § 30-9-11(B) (2009). As we explain more fully below, despite Defendant's arguments, there is no such justification for touching minors that would otherwise fall under the statute. While Defendant is correct that the State must establish that the touching was unlawful, he is incorrect in asserting that the question is rooted in fact. Nor does he provide authority to support his assertion that religiously motivated touching is lawful. In fact, as far as Defendant argues intent, we note that our Supreme Court has stated that it "[does] not believe the [L]egislature intended to adopt a requirement of specific sexual intent as an element of either [CSPM or CSCM] statute." *Pierce*, 1990-NMSC-049, ¶ 21. Defendant was mistaken as to whether his conduct was illegal, not as to what he did. Therefore, the fact that Defendant believed that his behavior was excepted, because it was motivated by a sincere religious belief, from what would otherwise be considered criminal, is not an appropriate matter for the jury, and the instruction was properly rejected by the district court.

**D.    Sufficient Evidence Supported the Jury's Verdict**

**{19}**    Substantial evidence claims can be raised for the first time on appeal. *State v. Stein*, 1999-NMCA-065, ¶ 9, 127 N.M. 362, 981 P.2d 295. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. Consequently, "[w]e determine whether a rational factfinder could have found that each element of the crime was established beyond a reasonable doubt." *State v. Kent*, 2006-NMCA-134, ¶ 10, 140 N.M. 606, 145 P.3d 86.

**{20}**    Defendant argues that the State did not provide enough evidence on the elements of CSCM to support his conviction with regards to A.S. He was convicted of one count of CSCM, which is defined as:

> A.    Criminal sexual contact of a minor is the unlawful and intentional touching of or applying force to the intimate parts of a minor or the unlawful

7

and intentional causing of a minor to touch one's intimate parts. For the purposes of this section, "intimate parts" means the primary genital area, groin, buttocks, anus[,] or breast.

B.    Criminal sexual contact of a minor in the second degree consists of all criminal sexual contact of the unclothed intimate parts of a minor perpetrated:

. . . .

(2)    on a child thirteen to eighteen years of age when:

(a) the perpetrator is in a position of authority over the child and uses that authority to coerce the child to submit[.]

NMSA 1978, § 30-9-13 (2003). Defendant was convicted of CSCM with respect to A.S., who testified that he kissed her "[o]n the breast[]." Defendant argues that because A.S. testified on cross-examination that he had not touched her anywhere that would be covered by a bikini, there was insufficient evidence that he had criminal sexual contact with the unclothed intimate parts of a minor. We note that CSCM also may be committed over clothes, although here, Defendant was charged with the offense of touching unclothed intimate parts. Section 30-9-13(A). A.S. did testify at trial that Defendant had not touched her anywhere that would be covered by a bikini. However, she also testified that he kissed her "[o]n the breast[]." "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [a witness's] version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Because the jury was free to weigh the conflicting testimony and give weight to A.S.'s description of Defendant kissing her breast, there was sufficient evidence to support his conviction for CSCM. To the extent that he also argues that there was not enough evidence to support the jury finding of criminal intent, as opposed to religious intent, we note again that there is no exception to the statute based on religious purpose. As Defendant cites no authority in making an argument for one, we consider it no further. Section 30-9-13.

**{21}**    Defendant next argues that the CSCM statute is vague and he was therefore inadequately notified that there was no religious exception to the statute. Defendant claims that he was "not informed that CSCM would find him to have criminal intent to commit sexual contact and be a sex offender when he did not have sexual intent, but rather a religious one." Defendant cites only *Pierce* for this proposition, which in fact held the opposite. "After reviewing the statutory provisions of our CSPM and CSCM statutes, we do not believe the [L]egislature intended to adopt a requirement of specific sexual intent as an element of either statute." 1990-NMSC-049, ¶ 21. Defendant points out that *Pierce* states that "[t]he terms 'unlawful' or 'unlawfully' limit the scope of prohibited conduct to those acts that are without legal justification or excuse." *Id.* ¶ 12. And, we agree. There is little need to inform Defendant of a proposition of law that does not exist. As we previously discussed in relation to Defendant's jury instruction argument, there is no support for including religious ceremonies within those activities that are legally justified, particularly when, as in this case, he was convicted under the section of the statute that requires only a violation of bodily integrity. We conclude that Defendant's intent argument fails to identify

8

any basis for a religious intent exception to our CSCM statute.

**{22}** Defendant's final argument based on sufficiency of the evidence is that it was inconsistent that the jury found him guilty of CDM, but not CSCM, with respect to L.S., because the jury instructions for both required that the jury find that he touched L.S.'s breast. He maintains that if he was found not guilty of CSCM, it is impossible for him to be found guilty of the other.

**{23}** The CDM statute requires that "committing any act or omitting the performance of any duty, which act or omission causes or tends to cause or encourage the delinquency of any person under the age of eighteen years." NMSA 1978, § 30-6-3 (1990). The jury instruction defined the necessary elements of this particular instance of contributing to delinquency as permitting "L.S.[] to take her clothes off and lay naked with him and touched her unclothed intimate part, to wit: breast, with a part or parts of his body[.]" L.S. testified that Defendant did not touch her breast.

**{24}** We reiterate that "[c]ontrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [a witness's] version of the facts." *Rojo*, 1999-NMSC-001, ¶ 19. Still, the fact that the jury did not believe the witness does not establish that the opposite of her testimony is true. *See State v. Wynn*, 2001-NMCA-020, ¶ 6, 130 N.M. 381, 24 P.3d 816. "The test for sufficiency of the evidence is whether substantial evidence of either a direct *or circumstantial* nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (emphasis added) (internal quotation marks and citation omitted). "A reasonable inference is a conclusion arrived at by a process of reasoning. . . . This conclusion, however, must be a rational and logical deduction from facts admitted or established by the evidence, when such facts are viewed in light of common knowledge or common experience." *Dull v. Tellez*, 1971-NMCA-133, ¶ 13, 83 N.M. 126, 489 P.2d 406 (internal quotation marks and citation omitted); *State v. Romero*, 1968-NMCA-078, ¶ 17, 79 N.M. 522, 445 P.2d 587.

**{25}** L.S. testified that, while she was unclothed and in bed next to the unclothed Defendant, he put his chest on her chest below her breast, he embraced her by putting his arm on her back as they lay on their sides, and he laid his head and hand on her heart. She stated that there was distance between them at first, but then he held her closer. She could not remember if they had been "skin-to-skin." We conclude that it is possible that a rational factfinder could find from the circumstances L.S. described—close proximity, lack of clothing, and touching of various areas of her chest—that Defendant touched her unclothed breast.

**{26}** The fact that the jury did not convict Defendant of CSCM does not matter. In a case where a defendant was similarly convicted on a CDM charge, but acquitted on an assault charge for the same behavior, this Court has stated that "[f]or its acquittal . . . , the jury is answerable only to conscience. The verdict of acquittal is beyond our control. Our business

9

is to review the verdict of conviction." *State v. Leyba*, 1969-NMCA-030, ¶ 36, 80 N.M. 190, 453 P.2d 211 (explaining further that "we can only speculate that the jury found [the] defendant did not commit an assault . . . . The jury acquitted him on that charge. They may have done so for any number of reasons. They may have decided that one punishment would meet the ends of justice. [The d]efendant's guilt of assault may have been plain and the jury may have refused to convict in defiance of reason"). We therefore will not review the acquittal for CSCM and conclude that there was sufficient evidence to support the jury's conviction for CDM.

## E.      Prosecutorial Misconduct

**{27}**    Although the brief-in-chief headings include one for a "prosecutorial misconduct" argument, no material follows the heading, and we disregard the issue as it is not raised on appeal.

## F.      It Was Not Ineffective Assistance that Defendant's Counsel Did Not Raise RFRA at Trial

**{28}**    Defendant next claims that it constituted ineffective assistance by his counsel to fail to assert a defense based specifically on RFRA, NMSA 1978, § 28-22-3 (2000). Defendant claims that because religion was a key aspect of his entire defense, his counsel could have only omitted mention of RFRA in error. The State argues that Defendant fails to show how the merits of a RFRA argument would have been relevant at trial and that he had no religious defense available and therefore was not prejudiced by the lack of mention of RFRA. At trial, Defendant's counsel frequently raised his religion as a defense, particularly to the unlawfulness of his behavior. We note that this Court rejected Defendant's previous arguments above that used religious purpose to justify unlawfulness with regard to jury instructions, statutory vagueness, and mistake of law.

**{29}**    "The standard of review for claims of ineffective assistance of counsel is de novo." *State v. Boergadine*, 2005-NMCA-028, ¶ 33, 137 N.M. 92, 107 P.3d 532. "[The d]efendant has the burden of demonstrating ineffective assistance of counsel by showing that trial counsel did not exercise the skill of a reasonably competent attorney and that [the d]efendant was prejudiced by trial counsel's performance." *State v. Harrison*, 2000-NMSC-022, ¶ 61, 129 N.M. 328, 7 P.3d 478. A defendant cannot make a claim for ineffective assistance of counsel "if there is a plausible, rational strategy or tactic to explain the counsel's conduct." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 26, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted).

**{30}**    "[The d]efendant has the burden of showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different." *Harrison*, 2000-NMSC-022, ¶ 61. Accordingly, we examine whether the results of the trial would have been different had defense counsel raised a RFRA defense in addition to the other religious arguments, and therefore turn to the merits of RFRA as applied to

10

Defendant's case. The RFRA states:

> A government agency shall not restrict a person's free exercise of religion unless:
>
> A.      the restriction is in the form of a rule of general applicability and does not directly discriminate against religion or among religions; and
>
> B.      the application of the restriction to the person is essential to further a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

Section 28-22-3. " '[F]ree exercise of religion' means an act or a refusal to act that is substantially motivated by religious belief[.]" NMSA 1978, § 28-22-2(A) (2000). On appeal, neither party relies on New Mexico cases interpreting RFRA. Both cite to federal cases interpreting the federal RFRA. Defendant specifically claims that "[i]t is presumed the [f]ederal RFRA is a guideline." We note that the federal RFRA and the New Mexico statute differ and any guidance from the federal statute is misplaced.[1] The New Mexico statute states that the government shall not restrict free exercise of religion unless the law is one of general applicability, does not discriminate against or among religions, furthers a compelling governmental interest, and is the least restrictive means of furthering that interest. Section 28-22-3. Therefore, when a statute is one of general applicability, RFRA is not violated if the government demonstrates that such a law furthers a compelling interest and is the least restrictive means to do so. *Id.*

**{31}** Defendant focuses on his claim that the least restrictive enforcement of the law would have allowed him to present a religious exception to the CSCM and CDM statutes to the jury in line with his claim that his religious purpose prevented him from forming the requisite intent, or otherwise excused his actions. This argument echoes his earlier claims that the law permits a religious exception to the general CSM statute, which we dealt with above.

**{32}** A law is generally applicable "when it does not impose burdens on select groups." *Elane Photography, LLC v. Willock*, 2012-NMCA-086, ¶ 36, 284 P.3d 428, 441, *cert. granted*, 2012-NMCERT-008, 296 P.3d 491. In a case dealing with whether spanking in childcare facilities violates regulations prohibiting physical punishment, this Court has stated: "We find nothing within [the childcare] statutes [and regulations] that detracts from their character as being generally applicable and religion-neutral. We find nothing that

---

[1]The federal RFRA sought "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened[.]" 42 U.S.C. § 2000bb(b)(1). It was held unconstitutional as applied to the states in *City of Boerne v. Flores*, 521 U.S. 507 (1997).

intimates a legislative intent to discriminatorily burden religious exercise." *Health Servs. Div., Health & Env't Dep't of State of N.M. v. Temple Baptist Church*, 1991-NMCA-055, ¶ 18, 112 N.M. 262, 814 P.2d 130. The criminal prohibition against sexual contact of minors or contributing to their delinquency is no less generally applicable.

**{33}** Further, protecting minors from criminal sexual contact and delinquency is a compelling state interest. *See Oldfield v. Benavidez*, 1994-NMSC-006, ¶ 15, 116 N.M. 785, 867 P.2d 1167 ("The state itself has a compelling interest in the health, education, and welfare of its children."); *see also State v. Lucero*, 1982-NMSC-069, ¶ 14, 98 N.M. 204, 647 P.2d 406 (holding child abuse statutes to be strict liability because of the "obvious public interest of prevention of cruelty to children").

**{34}** In addition, the statutes are the least restrictive method of achieving the government's goal of protecting children by punishing their abusers. The "least restrictive" factor does not permit a defendant to present instructions to the jury on an incorrect religious exception to intent. As we stated above, the Supreme Court has stated: "[W]e do not believe the [L]egislature intended to adopt a requirement of specific sexual intent as an element of either statute." *Pierce*, 1990-NMSC-49, ¶ 2. Therefore, to the extent that Defendant argues that there is a religious exception to intent, showing that he had a religious intent does not negate any element of the crimes, or contribute to an argument that the statutes are not the least restrictive means for achieving the government's goal.

**{35}** The CSCM and CDM statutes are laws of general applicability that do not directly discriminate against or among religions, further the compelling governmental interest of protecting minors from sexual abuse and delinquency, and are the least restrictive means of doing so. We conclude that Defendant's RFRA argument is without merit, and his counsel's tactical decision to not raise RFRA as part of his other religious argument did not constitute ineffective assistance by his counsel.

## G.    There Was No Error and Therefore No Cumulative Error

**{36}** Defendant finally claims that cumulative error deprived him of a fair trial. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *modified on other grounds by State v. Gallegos*, 2007-NMSC-007, ¶ 17, 141 N.M. 185, 152 P.3d 828.

**{37}** Here, we have found no error in any of the district court's decisions that Defendant challenges. When there is no error, "there is no cumulative error." *State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211. Because there was no individual error, we find no cumulative error.

## III.    CONCLUSION

**{38}** We hold there was no error in the remaining claims raised by Defendant on appeal. We affirm his convictions.

**{39}** **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**TIMOTHY L. GARCIA, Judge**