This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40273

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JONATHAN KELLY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Mary Marlowe Sommer, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Justine Fox-Young, P.C.
Justine Fox-Young
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**WRAY, Judge.**

**{1}** Defendant Jonathan Kelly appeals the jury's conviction for voluntary manslaughter, contrary to NMSA 1978, Section 30-2-3(A) (1994), and argues that the State did not prove beyond a reasonable doubt that Defendant did not act in self-defense. Applying well-established standards of review, we conclude that sufficient evidence supported Defendant's conviction and affirm. *See State v. Montoya*, 2015-NMSC-010, ¶¶ 52-53, 345 P.3d 1056.

**DISCUSSION**

**{2}**     Because this memorandum opinion is issued solely for the benefit of the parties, we limit our recitation of the facts to those necessary to resolve this appeal. For our review, the "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. In the present case, the jury was instructed on second-degree murder and voluntary manslaughter as alternatives. For both charges, the district court instructed that to find Defendant guilty, the jury would need to determine that the State proved beyond a reasonable doubt that—in relevant part—Defendant did not act in self-defense. *See* UJI 14-5171 NMRA use note 1 (providing that self-defense language be added to elements instructions if the defendant asserts a self-defense theory "based on necessary defense of self against any unlawful action"). The district court further instructed that

> [t]he killing [was] in self[-]defense if:
>
> 1.      There was an appearance of immediate danger of death or great bodily harm to . . . Defendant as a result of being struck with or stabbed by a knife by [the victim]; and
>
> 2. . . . Defendant was in fact put in fear by the apparent danger of immediate death or great bodily harm and killed [the victim] because of that fear; and
>
> 3.      A reasonable person in the same circumstances as [D]efendant would have acted as [D]efendant did.

*See* UJI 14-5171. The instruction continued to place the burden "on the [S]tate to prove beyond a reasonable doubt that [D]efendant did not act in self[-]defense." *Id.*

**{3}**     Based on these instructions, the jury acquitted Defendant of second-degree murder but found that Defendant did not act in self-defense and convicted for voluntary manslaughter. On appeal, Defendant only challenges, and we therefore only address, whether the State failed to prove that Defendant did not act in self-defense. Defendant argues that the version of events that "came into evidence mainly through . . . admissions to crisis negotiators [CNT] in the hours after the stabbing . . . was essentially uncontested." Law enforcement witnesses testified at trial that on the night of the stabbing, Defendant told CNT the following version of events. A couple "came by [his house] to visit" and "had some drinks." At some point during the visit, the couple began to argue, and the victim threatened the other visitor. Defendant told the couple to leave, and in response, the victim pulled out a knife and lunged at Defendant. Defendant asserted that he stepped to the side, grabbed the knife in the victim's hand, and turned it around on the victim to push him away. Defendant stated to CNT that the knife went into the victim "with his own force" and may have cut the victim's arm or shoulder. Based on this evidence, Defendant maintains that the jury had no other version of

events to accept and that "[t]here [were] no facts in evidence whatsoever that would support the logical inference that [Defendant] did not act in self-defense."

**{4}** The State, however, presented sufficient evidence at trial to contradict the version of events that Defendant relayed to CNT and to permit the jury to reject the self-defense claim beyond a reasonable doubt. *See Montoya*, 2015-NMSC-010, ¶ 52 (explaining that on appeal, we "do not weigh the evidence or substitute our judgment for that of the fact[-]finder so long as there is sufficient evidence [in the record] to support the verdict" (alterations, internal quotation marks, and citation omitted)); *State v. Bent*, 2013-NMCA-108, ¶ 19, 328 P.3d 667 (describing our inquiry as determining "whether a rational fact[-]finder could have found that each element of the crime was established beyond a reasonable doubt" (internal quotation marks and citation omitted)). First, the State offered the testimony of the medical examiner who supervised the victim's autopsy. The medical examiner testified that the trajectory of the fatal injury made it "extremely unlikely" that the injury was self-inflicted and required greater force than "gentl[e] pressing." This testimony directly contradicts the story Defendant told CNT—that the victim held the knife and effectively stabbed himself when Defendant grabbed and turned the victim's arm that held the knife—and the jury was "free to reject Defendant's version of the facts." *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{5}** Second, the evidence at trial established that Defendant's version of events changed multiple times. Defendant initially told CNT that he had no idea why the police were at the house, he had been asleep, and no one had been inside the house other than himself and his dog. Later in the same recording, Defendant relayed to CNT the events in the preceding paragraph. While awaiting trial, however, Defendant also told several different versions of events on recorded jail calls, including one in which he stated that the couple had robbed him while he slept and the stabbing occurred when Defendant refused to give up his wallet.

**{6}** Third, further contradicting Defendant's version was the victim's partner, who testified at trial that she was nearby Defendant and the victim when the stabbing occurred, the atmosphere was calm, and Defendant and the victim were talking within a foot of each other when suddenly the victim told her to "get your stuff let's go." The witness also stated that she did not recall seeing the victim with a knife, but she saw blood on her way out the door. The victim's partner also testified that Defendant and the victim had a prior disagreement and were in contact by cell phone in the days before the stabbing, and the couple had been invited to Defendant's house to "smooth things over."

**{7}** On appeal, Defendant attacks the credibility of the victim's partner's testimony and argues that she "appeared heavily intoxicated on the night of the stabbing and that her story changed as she was repeatedly interviewed that night." Defendant also argues that the victim's partner was in shock and "had experienced some memory issues since" the stabbing. We, however, view the sufficiency of the evidence "in the light most favorable to the guilty verdict," *Bent*, 2013-NMCA-108, ¶ 19, leave witness credibility for

the jury's consideration, *see State v. Candelaria*, 2019-NMSC-004, ¶ 45, 434 P.3d 297, and do not "weigh the evidence or substitute [our] judgment for that of the fact[-]finder," *State v. Chavez*, 2009-NMSC-035, ¶ 11, 146 N.M. 434, 211 P.3d 891 (internal quotation marks and citation omitted); *see also* UJI 14-5020 NMRA (instructing that the jury members "alone are the judges of the credibility of the witnesses and the weight to be given to the testimony of each of them"). Because the jury acquitted Defendant of second-degree murder, by convicting Defendant of voluntary manslaughter, it necessarily concluded that "[D]efendant acted as a result of sufficient provocation." *See* UJI 14-220. Yet the jury was free to conclude that whatever provocation Defendant faced was insufficient to establish Defendant's claim of self-defense.

**{8}** Each change in Defendant's story and each bit of contradictory evidence provided a basis for the jury to doubt the credibility of the claim that Defendant acted in self-defense due to "fear by the apparent danger of immediate death or great bodily harm." *See* UJI 14-5171; *Candelaria*, 2019-NMSC-004, ¶ 45 ("The jury alone is the judge of the credibility of the witnesses and determines the weight afforded to testimony." (internal quotation marks and citation omitted)). Based on the evidence presented at trial, we conclude that a reasonable jury could find beyond a reasonable doubt that the stabbing was motivated by something other than fear. *See State v. Sutphin*, 1988-NMSC-031, ¶ 23, 107 N.M. 126, 753 P.2d 1314 (affirming a conviction after a trial in which "[t]he jury was instructed on [the] defendant's theory of self-defense, and although evidence conflicting with the state's theory of first degree murder was introduced, the jury resolved conflicts in the evidence and questions of credibility in favor of guilt, thereby rejecting [the] defendant's version of the incident").

**CONCLUSION**

**{9}** For the above stated reasons, we affirm.

**{10} IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**SHAMMARA H. HENDERSON, Judge**