# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-3496

_____

United States of America

*Plaintiff - Appellee*

v.

Krystal Wallace

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: December 16, 2016
Filed: March 28, 2017

_____

Before WOLLMAN and SMITH,[1] Circuit Judges, and WRIGHT,[2] District Judge.

_____

SMITH, Circuit Judge.

_____

[1]The Honorable Lavenski R. Smith became Chief Judge of the United States Court of Appeals for the Eighth Circuit on March 11, 2017.

[2]The Honorable Wilhelmina M. Wright, United States District Judge for the District of Minnesota, sitting by designation.

A jury convicted Krystal Wallace of assaulting a federal officer with her car. At trial, Wallace sought to admit her videotaped statement about the incident, but the district court[3] excluded it as cumulative. At sentencing, the court calculated Wallace's Guidelines range as 188–235 months' imprisonment, but it varied downward to 48 months. Wallace contends that there was not enough evidence to convict her, that her videotaped statement should not have been excluded, and that the district court erred in calculating her Guidelines range and imposed an unreasonable sentence. We affirm.

## I. *Background*
### A. *The Veterans Administration Incident*

On March 3, 2010, Wallace drove her sister Kimberly to the Veterans Administration (VA) hospital in Little Rock. They were driving a friend's 1990s Honda Accord. Two of Wallace's daughters and her ex-boyfriend accompanied them. Wallace believed that Kimberly wanted to visit her friend who worked there as a security guard. They arrived around 2:30 p.m. and parked. Kimberly got out of the car and went inside. Wallace and her ex-boyfriend also got out and began to argue. The ex-boyfriend eventually left on foot. Wallace got back in the car. Then Kimberly returned to the car visibly shaken. She got in and said, "Let's go."

As Wallace began to backup, she saw a man approaching from the right. Wallace heard someone yelling, "Stop the car, turn off the car." The man came up to the front of the car and jumped on the hood. Wallace assumed that the man was Kimberly's security-guard friend. She believed that he posed a threat to Kimberly because he acted aggressively. Wallace's children began screaming, and Wallace exclaimed to the man: "Get off the car, are you crazy, get the hell off my car." The man asked if Wallace was going to stop the car. She again told him to get off the car

---

[3]The Honorable James J. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

but agreed to stop. According to Wallace, at that point the man got off the car, and she resumed backing out. But the man jumped back onto her hood. Wallace continued backing out anyway and then abruptly stopped, causing the man to slide off the hood. Wallace did not check on the man's condition but immediately sped away from the VA.

Wallace later learned that the man on her hood was a federal police officer named Mark Atlas. Atlas was trying to get Wallace to stop because he was pursuing Kimberly, whom he suspected was panhandling. Atlas testified that when someone reported the possible panhandling, he followed Kimberly toward the car and said: "Stop. Police. Stop." Kimberly kept walking and got in Wallace's car. Atlas then stepped in front of the car and told Wallace, the driver, to "Shut the vehicle off. Get out of the vehicle. Police." He was yelling and banging on the hood. When Wallace did not comply, Atlas grabbed his gun. When he saw the kids, though, he holstered it and told Wallace again to shut the car down. But the car lunged forward toward Atlas, who, in his words "instinctively jumped, and I landed on the hood." Atlas jumped on the hood to avoid being struck as "[t]he vehicle came at me."

Atlas injured his left side when he tumbled from Wallace's car. He experienced severe pain and some bruising. The emergency room doctor prescribed a narcotic for the pain and advised over-the-counter muscle relaxers. Atlas was at the hospital no more than four hours.

After leaving the VA, Wallace had time to consider the events and her actions. Within an hour, she drove to a police station and gave a voluntary statement recounting the incident. She told a VA investigator that she was not trying to hurt anyone. She explained her behavior as panic caused by misunderstanding the actions of the man who jumped on her car while her kids were in the backseat.

B. *The Criminal Case*

The government charged Wallace with violating 18 U.S.C. § 111(a)(1) and (b) by assaulting an on-duty federal officer with a deadly or dangerous weapon (her car) and causing bodily injury. Before trial, the government asked the court to suppress, as hearsay, a videotaped statement that Wallace gave at the police station. The district court granted the motion, but it clarified on the morning of trial that its ruling was "preliminary . . . and subject to change based on what happens during the trial." Wallace testified at trial. She talked about her statement to the VA investigator and introduced a short written version of her statement as evidence. Then Wallace moved to introduce the whole videotaped statement as well. The government opposed the motion, arguing that the video would improperly bolster Wallace's testimony and would be cumulative of the testimony that she had already given. The district court sustained the objection. Wallace moved for acquittal at the close of the government's case and her own, but the court denied those motions. The jury found Wallace guilty.

At sentencing, the court calculated Wallace's Guidelines range at 188–235 months' imprisonment. The government agreed with Wallace that this range was too harsh. The court varied downward to 48 months. Wallace appeals the denial of her acquittal motions, the exclusion of her videotaped statement, and the calculation and reasonableness of her sentence.

II. *Discussion*

A. *Acquittal Motions*

We review the denial of Wallace's acquittal motions de novo. *United States v. Drapeau*, 644 F.3d 646, 652 (8th Cir. 2011). If there is substantial evidence in the record to support the jury's verdict, we will affirm. *Id.* Substantial evidence means evidence strong enough to prove guilt beyond a reasonable doubt. *Id.* We look at the record, though, in the light most favorable to the government. *Id.* We do not reweigh evidence or reassess credibility. *United States v. Schnapp*, 322 F.3d 564, 572 (8th Cir.

2003). And we draw reasonable inferences in favor of the jury's verdict, not in favor of the defendant. *United States v. Williams*, 647 F.3d 855, 859 (8th Cir. 2011).

To convict Wallace of violating 18 U.S.C. § 111(a) and (b) in this case, the jury had to find (1) that Wallace forcibly assaulted Atlas with a deadly or dangerous weapon while Atlas was on duty; (2) that Wallace did so voluntarily and intentionally; and (3) that the assault resulted in bodily injury. *See Drapeau*, 644 F.3d at 652. This elements formulation is peculiar to this case. The indictment charged that Wallace violated "Section[] 111(a)(1)(b)" by committing the assault "using a deadly and dangerous weapon and inflicting bodily injury," and the jury was told that it had to find a weapon and bodily injury. The statute, however, requires a weapon *or* bodily injury. We nevertheless hold the government to the elements charged in its indictment.

Wallace contends that the government's proof failed to establish that she acted voluntarily and intentionally and that she used her car as a deadly or dangerous weapon. The jury faced competing accounts of the events at the VA. And the verdict reflects that the jury credited Atlas's account rather than Wallace's. Atlas described Wallace as purposely driving toward him and forcing him to leap onto the car hood to avoid being struck or run over. If believed, Atlas's account provides sufficient proof that Wallace acted voluntarily and intentionally.

We also conclude that sufficient evidence establishes that Wallace used her car as a deadly or dangerous weapon. "[F]or a car to qualify as a deadly weapon, the defendant must use it as a deadly weapon and not simply as a mode of transportation." *United States v. Arrington*, 309 F.3d 40, 45 (D.C. Cir. 2002). For instance, using a car "purely for flight" would not trigger liability under § 111(b). *Id.* Wallace's case is on the margins of assault-by-vehicle. She did not shift her car into drive and accelerate while an officer was reaching through the window, and then drag the officer 50 feet. *Cf. id.* at 42. Nor did she accelerate toward an impromptu

marshals' road block. *Cf. United States v. Yates*, 304 F.3d 818, 820 (8th Cir. 2002). The jury could nevertheless have reasonably found that by driving toward Atlas and forcing him to jump on the hood to avoid being hit, Wallace used the car as something other than transportation—that she used it as a deadly or dangerous weapon. *See Arrington*, 309 F.3d at 46 ("Conviction requires both the intent to commit one of the acts specified in § 111(a), and the intent to use the object that constitutes the deadly weapon.").

## B. *Exclusion of the Videotaped Statement*

We review the district court's exclusion of Wallace's videotaped statement for abuse of discretion. *United States v. Harris–Thompson*, 751 F.3d 590, 600 (8th Cir. 2014). Reversal is warranted only if the court's erroneous exclusion affected Wallace's substantial rights or we believe an error more than slightly influenced the verdict. *Id.*

A court may properly exclude needlessly cumulative evidence. Fed. R. Evid. 403; *see also Harris–Thompson*, 751 F.3d at 602. This includes "cumulative evidence bearing solely on credibility." *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980). A court also has "ample discretion to exclude prior consistent statements that are cumulative accounts of an event." Fed. R. Evid. 801 advisory committee's note to 2014 amendment.

At trial, Wallace recounted her voluntary statement to the VA investigator. Her written statement was also admitted into evidence. The district court excluded the videotaped statement primarily because it was cumulative when offered at trial. Wallace has not distinguished the substance of the story she told on video from the one she told at trial. Instead, she argues that the video would have given the jury the opportunity to see her demeanor, body language, and mannerisms soon after the

-6-

incident. She contends that this would have enabled the jury to consider her credibility within an hour of the event rather than four years later at trial.[4]

We discern no abuse of discretion. Both admitting and excluding the video were within the district court's range of choice. *See Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984). The court properly concluded that the probative value of additional relevant evidence of intent and credibility was substantially outweighed by its cumulative nature.

Wallace also contends that the court's pretrial exclusion of the video on hearsay grounds—before it ruled at trial that the video was cumulative—forced her to testify and foreclosed meaningful cross-examination. But Wallace offers no convincing authority or argument that inadmissible hearsay becomes admissible when an available defendant–witness prefers not to testify. Wallace faced a strategic dilemma, not a constitutional one. If the trial court's pretrial ruling was as controlling as Wallace suggests, then she could have refused to testify and appealed that ruling after the verdict. *See Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947, 952 (8th Cir. 2014) (noting that a definitive grant of a motion in limine preserves appellate review). Instead, Wallace chose to take the stand and offer essentially the same evidence as that presented by the videotaped statement before seeking to admit the video. By doing this, Wallace risked Rule 403 exclusion based on the video's probative value being outweighed by its cumulative nature. Moreover, even if excluding the video was error, we are not convinced that Wallace's substantial rights or the verdict were affected. It is far from certain that seeing another version of Wallace's account, albeit nearer to the event, would have caused the jury to discredit Atlas.

---

[4]We deny Wallace's motion to add the video to the record. We do, however, accept Wallace's word about what the video would show.

## C. *Sentencing*

Wallace also appeals the district court's degree-of-injury finding, its Guidelines calculation, and the reasonableness of her sentence.

### 1. *Degree-of-Injury Finding*

We review sentencing fact findings for clear error. *United States v. Jenkins*, 578 F.3d 745, 749 (8th Cir. 2009). If a finding is plausible in light of the whole record, we will not reverse it. *United States v. Tucker*, 243 F.3d 499, 506 (8th Cir. 2001). This is true even if we would have found differently in the first instance, and it is especially true if the finding is credibility-based. *Id.*

Wallace raises several sentencing errors flowing from the district court's finding that Atlas suffered more than "serious bodily injury" but less than "permanent or life threatening bodily injury," as those terms are used in the Guidelines. She argues that Atlas's 2015 out-of-court statement relayed by a probation officer at sentencing should not have been admitted to establish the seriousness of his injuries. In a phone call, Atlas told the officer that he had lost some use of his leg and experienced great pain. Atlas also claimed, according to the officer, that he now walked with a limp, was still taking pain medication, and had tried rehabilitation therapy without success.

Hearsay—even uncorroborated hearsay—is admissible at sentencing if it has "sufficient indicia of reliability" and the defendant is allowed to rebut or explain it. *United States v. Garcia*, 774 F.3d 472, 475 (8th Cir. 2014) (per curiam). Atlas's hearsay account of his 2015 condition was backed by the testimony of witnesses who saw him injured in 2010, which allays any reliability concerns. One trial witness testified that Atlas was thrown ten feet off of Wallace's car and "rolled across the pavement holding his leg, you know, and in pain." He was "rolling back and forth and in pain. He was in a lot of pain." An officer at the scene said Atlas was holding his leg, "and it seemed like he was in a lot of pain." Atlas said that on a scale of one to

ten, the pain was a ten—"10 is the worse part and that was my left leg, my back, my hip, the whole left side." He had bruises on his torso, his leg, and his hip, as well as knee pain. A residual limp and nagging pain in 2015 correlate with Atlas's 2010 condition. Also, Wallace cross-examined the probation officer and chose not to examine Atlas, who was present at sentencing. Admitting Atlas's 2015 hearsay statement was not an abuse of discretion.

## 2. *Guidelines Calculation*

We review the interpretation and application of the Sentencing Guidelines de novo. *Jenkins*, 578 F.3d at 749. Wallace contends that the district court erred in three ways when calculating her Guidelines range. She first contends that the court erred by applying the offense-conduct guideline for aggravated assault, § 2A2.2, rather than the one for obstructing or impeding officers, § 2A2.4. Wallace argues that § 2A2.2 applies where the offense conduct involves "serious bodily injury," and that she was not charged or convicted of causing that level of injury. But § 2A2.2 may be applied on another basis: when the offense conduct involves "a dangerous weapon with intent to cause bodily injury . . . with that weapon." U.S.S.G. § 2A2.2 cmt. n.1. This basis for applying § 2A2.2 matches Wallace's indictment and conviction. *See* U.S.S.G. § 1B1.2(a) (instructing courts to select an offense-conduct Guideline by reference to the indictment). The district court did not err applying § 2A2.2.

Wallace's next contention—that the court erred in applying a six-level official-victim enhancement under § 3A1.2(c)(1)—depends on her argument that § 2A2.4, rather than § 2A2.2, is the proper offense-conduct guideline. Because § 2A2.2 is the proper offense-conduct guideline, this argument fails.

Wallace last contends that the district court erred in applying a six-level enhancement under § 2A2.2(b)(3)(E) because Atlas sustained more than "serious bodily injury" but less than "permanent or life-threatening bodily injury." According to Wallace, this was a double-counting error. The harm punished by the enhancement,

the argument goes, was already punished under the base offense level, because to invoke § 2A2.2 in the first place, the court had to find that Atlas sustained "serious bodily injury." As we explained earlier, however, the court did not apply § 2A2.2 because Wallace caused "serious bodily injury"; it applied § 2A2.2 because Wallace used "a dangerous weapon with intent to cause bodily injury." U.S.S.G. § 2A2.2 cmt. n.1. The district court's sentence is therefore procedurally sound.

### 3. *Reasonableness*

We review the substantive reasonableness of Wallace's sentence for abuse of discretion. *United States v. Merrell*, 842 F.3d 577, 584 (8th Cir. 2016). Wallace argues that the district court misweighed the sentencing factors outlined in 18 U.S.C. § 3553(a). She points out that she did not act maliciously; that Atlas's injuries were minor; that she went quickly to authorities; that she does not need deterrence; and that the public does not need protecting from her. These points do not establish that the district court ignored an important factor or relied on an improper one. Nor do we discern a clear error of judgment in the court's weighing of the factors. *See United States v. Lozoya*, 623 F.3d 624, 626–27 (8th Cir. 2010). Given this record, we cannot conclude that a 48-month sentence achieved through a 140-month downward variance was substantively unreasonable.

### III. *Conclusion*

Accordingly, we affirm the district court's judgment.

_____